IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 30, 2007

## WILLIAM JUSTIN BREWSTER v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
**No. 83560    Mary Beth Leibowitz, Judge**

_____

**No. E2007-00605-CCA-R3-PC - Filed February 21, 2008**

_____

The Appellant, William Justin Brewster, appeals the denial of his petition for post-conviction relief by the Knox County Criminal Court. Brewster argues that the post-conviction court erred in denying him relief on his asserted claims of ineffective assistance of counsel both during trial and on appeal. Upon thorough review, we conclude that the post-conviction court correctly denied the petition and affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

DAVID G. HAYES, J., delivered the opinion of the court, in which DAVID H. WELLES and D. KELLY THOMAS, JR., JJ., joined.

Kelly S. Johnson, Knoxville, Tennessee, for the Appellant, William Justin Brewster.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Leslie Nassios, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**Factual Background**

On direct appeal, this court provided the factual background and procedural history of this case as follows:

> At approximately ten o'clock on the evening of June 19, 2002, Michael Atteberry heard two gunshots at the residence of his neighbor, Bobby David Ervin, the victim. Mr. Atteberry saw a slender Caucasian male run out of the victim's house to a red Nissan truck, and a few seconds later, Mr. Atteberry heard three more gunshots. Then, a second person, Caucasian and heavier in build than the first

person, ran from the house to the truck. The truck left with dispatch but not hastily. Mr. Atteberry called the police.

When police officers arrived, they found the body of the victim in a recliner chair in the living room. The victim had been beaten with a blunt object, stabbed numerous times with a sharp object, and shot three times with a .357 gun.

. . . .

The officers' investigation caused them to look for the husband-and-wife defendants. . . .

The [Appellant and his wife] arrived at the station in their automobile. The officers interviewed them separately, beginning with [the Appellant's wife]. She signed a written waiver of her *Miranda* rights and gave a tape-recorded statement in which she stated that she and [the Appellant] had killed the victim. Likewise, after also waiving his *Miranda* rights, [the Appellant] confessed that he and [his wife] had killed the victim.[] He admitted that he took $150, a handgun, and some pills from the victim's home. The defendants told the officers that they could find the handgun used in the homicide beneath the front seat in the defendants' car. The officers retrieved the .357 revolver, which through forensic analysis proved to be the gun that fired bullets into the victim's neck, chest, and arm. In his pretrial statement, [the Appellant] admitted that he had obtained the revolver from the rear bedroom in the victim's house.

Based upon the foregoing evidence, the jury convicted each defendant of felony first degree murder, facilitation of first degree premeditated murder, especially aggravated robbery, and especially aggravated burglary. The trial court merged each verdict of guilty of facilitation of first degree premeditated murder with the respective verdict of first degree felony murder. Each defendant received a life sentence for the felony murder conviction and 25-year and 12-year Department of Correction sentences, respectively, for the especially aggravated robbery and especially aggravated burglary convictions.

*State v. Carrie Ann Brewster and William Justin Brewster*, No. E2004-00533-CCA-R3-CD (Tenn. Crim. App. at Knoxville, Apr. 5, 2005) (footnotes omitted), *perm. app. denied*, (Tenn. Aug. 22, 2005). On direct appeal, the Appellant and his wife challenged the sufficiency of the convicting evidence and the trial court's failure to suppress their pretrial statements. *Id.* This court affirmed the judgments of the trial court, except for modifying the conviction of especially aggravated burglary to aggravated burglary and imposing a sentence of six years. *Id.*

The Appellant filed a *pro se* petition for post-conviction relief on December 6, 2005 alleging, among other grounds, ineffective assistance of counsel both at trial and on appeal. He was

subsequently appointed post-conviction counsel, who filed an amended petition for post-conviction relief in the Knox County Criminal Court on October 12, 2006. A hearing was held on the petition on December 13, 2006, at which the post-conviction court heard the testimony of the Appellant and trial counsel. On March 9, 2007, the post-conviction court entered an order in which it denied the Appellant's petition for post-conviction relief. The Appellant timely appealed.

**Analysis**

On appeal, the Appellant presents the following issue for review:

The trial court committed prejudicial legal error by failing to grant post-conviction relief when it ruled that the convictions in this case were not void or voidable based on a violation of the civil rights of [the Appellant] due to pervasive and divisive conflicts with trial counsel or based on trial counsel's failure to consult with [the Appellant] on trial or appellate issues and defenses.

Initially, we conclude that it is unnecessary to address the Appellant's argument that his convictions are void or voidable based upon a civil rights violation "due to pervasive and divisive conflicts with trial counsel," as it is fundamental that in order to prevail on a post-conviction petition, the petitioner must establish that his conviction or sentence is void or voidable due to the abridgement of a constitutional right. T.C.A. § 40-30-103 (2003); *Howell v. State*, 151 S.W.3d 450, 460 (Tenn. 2004). Nonetheless, we address the Appellant's remaining contention that his convictions are void or voidable, "based upon trial counsel's failure to consult with [the Appellant] on trial or appellate issues and defenses." In his appellate brief, the Appellant's argument focuses entirely upon his assertion that trial counsel's "failures in his approach in communicating with Brewster created conflicts between the two men that were so pervasive and divisive that Brewster's right to the effective assistance of counsel must be presumed to have been violated."

Both the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Tennessee Constitution guarantee a criminally accused the right to representation by counsel. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). The United States Supreme Court and our supreme court have each recognized that the right to such representation encompasses the right to "reasonably effective" assistance, that is within the range of competence demanded of attorneys in criminal cases. *Id.* To establish ineffective assistance of counsel, the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense. *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Overton v. State*, 874 S.W.2d 6, 11 (Tenn. 1994); *Butler v. State*, 789 S.W.2d 898, 899 (Tenn. 1990)). Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. *Nichols v. State*, 90 S.W.3d 576, 586 (Tenn. 2002).

To prove a deficiency in representation, the petitioner must show that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing

professional norms. *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2065; *Goad*, 938 S.W.2d at 369; *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381, 106 S. Ct. 2574, 2586 (1986).

The issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). A trial court's findings of fact underlying a claim of ineffective assistance of counsel are reviewed on appeal under a *de novo* standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d)). However, a trial court's conclusions of law, such as whether counsel's performance was deficient or whether that deficiency was prejudicial, are reviewed under a purely *de novo* standard, with no presumption of correctness given to the trial court's conclusions. *Id*. at 458.

At the post-conviction evidentiary hearing, the Appellant testified that trial counsel was appointed approximately one year prior to trial and that he met with counsel once or twice up until two weeks before trial, when they met almost every day to work on trial strategy and proof. He recalled that trial counsel employed an investigator and an "apprentice" in preparing for the case. The Appellant testified that during his discussions with counsel, he felt that his own input regarding the case was not being considered.[1] For example, the Appellant testified that he wanted to present a self-defense argument at trial, but this option "was just shot out the window" because of his statement to the police, and that "there was no . . . preparation to come in here and plead self-defense." He testified that trial counsel told him "there was . . . only one defense in this case" and that he "pretty much sat back and let [his] lawyer drive, as far as that went." The Appellant further stated that "it was decided" that he, rather than his separately represented co-defendant wife, would take the stand at their joint trial, however, he later decided not to testify. He testified that, in hindsight, he believed he would have been better off if his case had been severed from that of his wife. The Appellant further stated that after he was convicted, he never met with trial counsel to discuss issues to be pursued on direct appeal.

On cross-examination, the Appellant was questioned regarding a purported self-defense strategy. He stated that he intended to explain to the jury that the victim "got a hold of [the

---

[1] The Appellant also testified that he had been "doped out of [his] mind" when he confessed to felony murder, presumably attributing the admission of his confession into evidence to some unspecified error of trial counsel. However, the record reflects that trial counsel moved, unsuccessfully, to suppress the Appellant's statements to police, and, further, the Appellant acknowledged that the issue of voluntariness of his confession was raised before this court by counsel on direct appeal. In that opinion, we concluded that the record supported the trial court's determination that the Appellant gave a knowing and voluntary statement to police. *State v. Carrie Ann Brewster and William Justin Brewster*, No. E2004-00533-CCA-R3-CD. As the Appellant has failed to establish either deficient performance or prejudice as to this issue, and, further, as it has been previously determined, *see* T.C.A. § 40-30-106(f), we conclude that it is without merit.

Appellant's] wife" and that he had been defending her. The Appellant admitted that he had the opportunity to testify at trial, and that trial counsel, his co-defendant wife, and his mother had encouraged him to testify, but he had ultimately chosen not to do so. The Appellant agreed that any chance he had of convincing the jury that he acted to protect his wife or himself was lost when he decided not to testify at trial. The Appellant further stated that he never asked the trial court to discharge his attorney and that he "felt confident" with trial counsel. When asked about counsel's representation on appeal, the Appellant stated that he did not know what appellate issues that he would have raised that were not pursued by counsel but that he "would have liked to have sat and discussed it."

At the evidentiary hearing, trial counsel testified that he represented the Appellant at trial and on appeal. He testified that he believed that the Appellant and his wife would be tried separately but that the Appellant had been adamant about them going to trial together. Trial counsel stated that he did not think he had ever seen as compelling a case for felony murder noting the confessions of the Appellant and his wife to police, which he did not believe would be suppressed,[2] as well as tangible evidence held by the State, including the gun and bloodstained money. He testified that he explained to the Appellant "that his confessions don't amount to self-defense" and that "[s]elf defense is something you have to put on proof for" and that "[s]omebody had to testify." He testified that another problem with the defense related to the Appellant's wife, whom her own attorney, trial counsel, and the parties agreed could not be called as a witness based upon her performance at a preliminary hearing where he recalled her being "just about the worst witness [he had] ever seen."[3] Trial counsel described the defense strategy as attempting to establish that the Appellant and his wife lied in their confessions. He explained that he prepared his entire trial strategy around the fact that the Appellant would testify. He stated that the only conflict he remembered having with the Appellant was on the last day of trial, when the Appellant informed him that he did not wish to testify. Trial counsel further testified that he could not recall discussing any specific issues with the Appellant after trial, but that he subsequently prepared the appellate brief for direct appeal in which he challenged the sufficiency of the evidence and the admission of the Appellant's confession.

In the order denying post-conviction relief, the court specifically found that the Appellant and his wife had both waived their right to be tried separately in writing after extensive conversations with the court prior to trial. Additionally, the post-conviction court found that, after the Appellant notified counsel of his decision not to testify, the two had a heated exchange about the need for the Appellant to testify. The court further found that the Appellant understood his rights pursuant to *Momon v. State*, 18 S.W.3d 152 (Tenn. 1999), and freely made his own choice not to testify. The post-conviction court further noted that the Appellant had been hesitant to take the stand at the post-conviction hearing as well. With regard to trial counsel's challenge in preparing a defense, the post-

---

[2] Again, we note that despite his opinion, trial counsel filed a motion to suppress the statement of the Appellant, which was in fact unsuccessful.

[3] Trial counsel stated that the Appellant's wife had demonstrated that "she was easily riled" and "she had come after [Assistant District Attorney] Nassios at the suppression hearing." Furthermore, he believed that she would perjure herself if called as a witness.

conviction court noted that counsel was confronted with the Appellant's statement admitting "that he got his baseball bat at the time of the offense and that his wife and he beat the victim with the baseball bat as well as shot and stabbed the victim." The record clearly preponderates in favor of these findings. After discussing in detail the Appellant's testimony at the evidentiary hearing, the post-conviction court found that the Appellant "felt like the case was one sided and that he want[ed] another chance because in retrospect he believe[d] that [he] made poor decisions." We agree with this characterization of the Appellant's testimony.

The post-conviction court found that trial counsel "prepared his entire trial based upon [the Appellant]'s testimony and they had no conflicts regarding trial strategy." The court accredited trial counsel's testimony that he was thoroughly prepared for trial. Specifically, the court found as follows:

> [Trial counsel] took what he had, worked hard, created whatever defense he could, filed motions of suppression knowing that he would not achieve the results that [the Appellant] wanted, but knowing that he needed to do so, and knowing that the outcome of the trial would not be any different to the felony murder aspects of the trial, [and] fulfilled all of his obligations as counsel to [the Appellant] in an appropriate manner.

The record does not preponderate against these findings.

After a thorough review of the record, we agree that the Appellant has not established deficient performance or prejudice with regard to counsel's representation at trial and on appeal. Accordingly, we conclude that the post-conviction court correctly denied the Appellant's petition for post-conviction relief.

### CONCLUSION

Based upon the foregoing, the judgment of the Knox County Criminal Court is affirmed.

_____
DAVID G. HAYES, JUDGE

-6-